IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-00390

| | |
|---|---|
| DESHANE A MCCASKEY, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| JANA HENRY, AND YMCA OF GREATER CHARLOTTE, | ) |
| Defendants, | ) |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss [D.I. 9], Plaintiff's Response to Defendants' Motion to Dismiss [D.I. 13], Defendants' Reply to Response to Motion to Dismiss [D.I. 14], and Plaintiff's Surreply [D.I. 15]. For the reasons stated below, the Defendants' Motion is **GRANTED**.

### I. FACTUAL BACKGROUND

In reviewing this motion to dismiss, the Plaintiff's allegations have been taken as true. The following facts are presented as described in the Complaint. DeShane McCaskey ("Plaintiff") began her employment with the YMCA ("Defendant", and with Jana Henry, collectively, "Defendants") as a part time housekeeper at the Steele Creek YMCA on January 4, 2006. Plaintiff's Response at 2 [D.I. 13]. Within four months she was awarded the Recognition of Service Excellence Award (R.O.S.E) for being reliable, friendly, and hardworking. *Id*. In July 2006, her direct superior, Facilities Director Alex Rohleder, moved her to the Morrison Family YMCA and gave her two separate part time positions, which gave her full time hours but not full time status. *Id*. Plaintiff alleges Mr. Rohleder was appreciative of her work as the

1

number of complaints dropped after her arrival. *See id*. After Mr. Rohleder received word that Plaintiff was seeking full time employment elsewhere, he created the position of Facilities/Housekeeping Supervisor to allow Plaintiff to obtain full time status with the YMCA. *Id*. at 3. The Human Resources Director at that time, Leslie Chestnut, was a black woman and allegedly did not interfere with this promotion. *Id*. Both Mr. Rohleder and Ms. Chestnut left their positions and were replaced by Alvaro Morera (a Hispanic male) and Defendant Henry (a white woman), respectively. *Id*.

In August 2008, the Executive Director of the Morrison YMCA, Michelle Miller, allegedly approached Plaintiff about promoting her to Facilities Director of the Steele Creek YMCA, Plaintiff's former, smaller facility. Complaint at 2 [D.I. 2]. Plaintiff claims Ms. Miller discussed the job description and the pay scale associated with this new position, gave Plaintiff authority to reconfigure the Steele Creek Facilities/Housekeeping Department, and signed Plaintiff up for the Supervisor Class with the YMCA Leadership Academy. *Id*. Plaintiff told several members of the Supervisor Class about her promotion. *Id*. Defendant Henry found out about Plaintiff's discussions with other classmates, and informed Plaintiff that only her location was changing; Plaintiff's position would remain the same. *Id*. Defendant Henry promised to confirm this understanding with Michelle Miller. *Id*. After meeting with Defendant Henry, Miller informed Plaintiff that she was not being promoted immediately. *Id*. Miller did represent to Plaintiff that after Plaintiff enrolled in the YMCA's Director's Class, she could be promoted. *Id*. Regardless of the changes, Plaintiff transferred back to the Steele Creek YMCA as the Facilities/Housekeeping Supervisor in October 2008. (*Id*.) There, she was responsible for four part time employees. Plaintiff's Response at 5.

2

According to Plaintiff's own complaint, there were numerous issues with her tenure at Steele Creek. After going over her budget, the YMCA's Finance Director, Eric White, required Plaintiff to cut her employees' hours down to fifty-six per week. *Id*. Plaintiff received numerous complaints about her employees and of the cleanliness of her facility. *Id.* at 7. Though she disciplined the employees, the complaints continued. *See* Complaint at 5. Because of these complaints about the cleanliness of her YMCA, she hired two additional staff employees and cut the hours of her other employees. *Id*. Her employees regularly left early, spent time on the clock visiting other departments, and seemed to generally ignore their responsibilities. *Id*.

Plaintiff also clashed with the YMCA HR Director, Defendant Henry. Though not her immediate supervisor, Defendant Henry gave Plaintiff a verbal warning for giving a termination warning to a staff employee. Complaint at 5. The employee complained about the incident to Defendant Henry who allegedly sided with the employee against Plaintiff. *Id*. Defendant Henry then told this employee that Plaintiff had not been properly trained by the YMCA. *Id*. Defendant Henry repeated this allegation to Plaintiff. *Id*. When Plaintiff left on vacation without completing her employee schedule by the time she normally had it completed, Defendant Henry gave Plaintiff a "documented counseling" write up for mismanaging her staff. *Id*. at 6. Soon thereafter, although Plaintiff alleges she never received a written termination warning, Defendant Henry terminated Plaintiff's employment. Plaintiff's Response at 7.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Complaint at 10. The EEOC concluded that the information was insufficient to establish a violation of 42 U.S.C. § 2000e (1991) ("Title VII"). *See id*. On August 19, 2010, Plaintiff filed a complaint with this court, *pro se*, alleging that the Defendant YMCA violated Title VII by failing to promote her and then terminating her based on her race. *Id*. at 7. Pursuant

3

to Federal Rule of Civil Procedure 12(b)(6), Defendants have moved to dismiss Plaintiff's Complaint. Memo in Support of Motion to Dismiss at 1 [D.I. 9].

## II. LEGAL STANDARD

To survive a motion to dismiss, the plaintiff must make factual allegations which "raise a right to relief above the speculative level" and plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 547 (2007). The court must view the complaint in the light most favorable to the plaintiff and take the plaintiff's allegations as true. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). The Fourth Circuit requires district courts to construe *pro se* complaints liberally to ensure that valid claims do not fail merely for lack of legal specificity. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

Ensuring that form does not trump substance also requires courts to "look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff" to determine whether a *pro se* plaintiff can survive a motion to dismiss. *Garrett v. Elko*, No. 95-7939, 1997 WL 457667, at *1 (4th Cir. 1997) (per curiam) (referencing *Gordon*, 574 F.2d at 1149–1151). However, this liberal construction need not extend to outright advocacy for the *pro se* plaintiff. *Gordon*, 574 F.2d at 1151. *Pro se* plaintiffs, with the assistance of the district court's lenient eye, must still do more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## III. ANALYSIS

As a preliminary matter, Defendants assert that the Plaintiff's filings should not be considered because they were not filed on time. Defendants Reply at 2 [D.I. 14]. However, because Plaintiff is a *pro se* plaintiff, she filed on roughly the correct day, and she alleges her

4

submission date was approved by the Clerk's office, the Court has considered these materials. *See* Second Response at 2 [D.I. 15].

Even considering her responses, Plaintiff cannot defeat Defendants' Motion to Dismiss on either claim. Her failure to promote claim fails because the circumstances surrounding her rejection raise, at most, the inference that her employer disliked her, but there is no indication of unlawful discrimination. Her wrongful termination claim fails because she was not meeting her employer's legitimate expectations, and she was replaced by a member of her protected class.

## A. COUNT ONE: FAILURE TO PROMOTE

The prima facie case for failure to promote requires the plaintiff to meet four prongs: 1) that plaintiff is a member of a protected group; 2) that plaintiff applied for the position; 3) that plaintiff was qualified for that position; and 4) that the circumstances surrounding the plaintiff's rejection raise an inference of unlawful discrimination. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). Plaintiff can meet some of these prongs but ultimately does not plead sufficient facts to show that the circumstances surrounding her rejection raise an inference of unlawful discrimination.

### 1. Protected Class

Although she does not indicate her race in her original complaint, in a subsequent answer, Plaintiff does indicate that she is a black woman. Plaintiff's Response at 1 [D.I. 13]. Because she is a *pro se* plaintiff, it is appropriate to construe the responses as amendments to the complaint and use the information included therein. *Garrett*, 1997 WL 457667, at *1. Plaintiff further indicates that her problems began when a white woman, Defendant Henry, replaced her black Human Resource manager. Plaintiff's Response at 3. Taking as true Plaintiff's assertion that she is black, she has satisfied the requirement that she be a member of a protected class.

2. <u>Application to Position</u>

In order to establish a failure to promote claim under Title VII, a plaintiff must apply for a specific position. *Williams*, 370 F.3d at 430. An employee expressing a general desire to be promoted without submitting an application is not enough to establish a claim. *Id*. at 430–431 (citing *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003)). However, in certain circumstances, this requirement can be relaxed, as where the hiring process itself is discriminatory or where the employer inappropriately failed to post specific job openings. *Id.*

Here, Defendants assert that Plaintiff never alleges that a position existed or that she applied for the position. Defendant's Motion to Dismiss at 9 [D.I. 9]. However, Defendants' position fails to appreciate the flexibility of this prong as articulated by the *Williams* court. *See* 370 F.3d at 430. While the complaint does not allege that Plaintiff ever applied for the position of Housekeeping Director at the Steele Creek YMCA, this case presents a rather unique circumstance where, taking the complaint as true, Michelle Miller offered a promotion and then revoked the offer after speaking with Defendant Henry. Complaint at 4 [D.I. 2]. There was no formal application process, but rather, Plaintiff applied by stating her interest in the position. *See id*. The Complaint indicates that she was going to be promoted and the position was going to be created until Defendant Henry intervened. *Id*. It is unclear from the Complaint if the position ever truly existed, but Plaintiff has represented that the position would have been created by taking responsibilities from another Supervisor, Alvaro Morera. *Id*. Were this true, and if Defendant Henry's intervention was racially motivated, then Plaintiff's employment would have been interfered with in a manner which arguably violates 42 U.S.C. 2000e-2(a)(1) (1991).

### 3. Qualifications

Because Plaintiff was initially offered the position of Housekeeping Director at the Steele Creek YMCA, it could be presumed that she was qualified for the job; however, because she has not pled that she needed or possessed any specific qualifications, the court is reluctant to so hold. In determining whether a person is qualified for the position, the court looks at all relevant job criteria including interpersonal communication skills. *Hux v. City of Newport News, Va.*, 451 F.3d 311, 318 (4th Cir. 2006). A plaintiff's mere assertion of general qualifications is not enough without some reference to an objective standard. *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (holding that conclusory statements about a plaintiff's own qualifications are not enough to sustain a prima facie case for failure to promote under Title VII).

Here, Plaintiff, in her Complaint and in her two supplemental responses, failed to indicate the necessary qualifications for the position of Housekeeping Director. Instead, Plaintiff merely concludes that she had the qualifications and readiness to be promoted. Plaintiff's Response at 9. These conclusory statements are not enough to prove her qualifications, even when taking as true her assertions that she is "dependable, loyal, talented, strong and creative." Plaintiff's Second Response at 5 [D.I. 15]. Because *pro se* litigants are entitled to liberal constructions, the court could infer that she was qualified from Michelle Miller's offer of the position and her discussion of Plaintiff's "growth potential." Complaint at 4. However, the Court recognizes that clearly demonstrating one's qualifications is an important component of failure to promote actions. The Court is therefore reluctant to find that Plaintiff has met this requirement. Because it determines that Plaintiff has failed to meet prong four of the *Williams* test, the Court need not decide this issue.

4. <u>Unlawful Discrimination</u>

The circumstances surrounding Plaintiff's denial of a promotion suggest miscommunication or at most personal distaste, but no inference of unlawful discrimination is evident from her Complaint. The burden of establishing the inference of unlawful discrimination is "relatively easy." *Evans,* 80 F.3d at 960 (quoting *Young v. Lehman*, 748 F.2d 194, 197 (4th Cir. 1984)). However, the prima facie case exists to eliminate nondiscriminatory reasons and show that it is more probable than not that discrimination played a role in choosing not to promote an individual. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–254 (1981). Furthermore, Title VII is not a "general civility code for the American workplace." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). Thus, personal dislike, unrelated to membership in a protected class, is not enough to create a failure to promote claim under Title VII. *Cf. Gillam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142–143 (4th Cir. 2007) (holding that evidence of racial animosity is necessary to distinguish personal dislike from discrimination in Title VII harassment claims).

Here, there is no indication that the decision not to promote Plaintiff was racially motivated. Plaintiff merely notes that both Ms. Miller, who offered the position, and Defendant Henry, who apparently intervened to prevent the promotion, are white, and that her prior promotion had not been questioned when the HR Manager was a black woman, Leslie Chestnut. Plaintiff's Response at 3–4. Even granting Plaintiff that a promotion was offered and rescinded based on Ms. Miller's discussion with Defendant Henry, there is no indication that Defendant Henry used Plaintiff's race to change Ms. Miller's mind.

The lack of any statements or facts to support Plaintiff's conclusory allegation that the promotion offer was rescinded based on her race is all the more problematic because of the

alleged professional squabbles between Plaintiff and Defendant Henry. The two women fought over the proper disciplinary actions to be taken with regards to one of Plaintiff's employees. Complaint at 5. The situation led to Defendant Henry verbally warning Plaintiff and questioning her managerial ability, but no racially insensitive comments are alleged. *Id*. Defendant Henry also wrote Plaintiff up for "mismanaging her staff" after Plaintiff hired two additional employees despite a budget crunch and failing to post the schedule in a timely manner. (*Id*. at 5–6.) These allegations give rise to the inference that Defendant Henry thought Plaintiff was doing a poor job and perhaps personally disliked her, but there is no evidence of racial prejudice.

Even when the court liberally construes her pleadings, Plaintiff has not pled any facts which give rise to the inference that unlawful discrimination took place. This fourth prong is the crux of her case, and therefore, the Defendant's Motion to Dismiss should be granted in regards to her failure to promote claim.

B. COUNT TWO: WRONGFUL TERMINATION

Plaintiff also alleges that Defendants wrongfully terminated her employment in violation of Title VII. Complaint at 5. Establishing a prima facie case for wrongful termination under Title VII requires that a plaintiff meet a four prong test: 1) that she is a member of a protected group; 2) that she was terminated; 3) that at the time of termination she was meeting her employers legitimate expectations; and 4) that she was replaced by a similarly situated applicant outside her protected class. *Pettis v. House of Ruth Md., Inc.*, No. 04-2443, 2006 WL 6507699 at *2 (4th Cir. 2006) (per curiam) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). Because Plaintiff can only establish prongs one and two, and because she alleges facts that directly defeat her attempts to meet prongs three and four, she has not pled sufficient facts to survive Defendants' Motion to Dismiss her wrongful termination claim.

9

1. <u>Plaintiff's race makes her a member of a protected class.</u>

Plaintiff alleges that she is black and therefore is a member of a protected class. *See* discussion *supra* Part I(A).

2. <u>Plaintiff was terminated from her position as Housekeeping Supervisor.</u>

The parties do not dispute that Plaintiff was terminated on August 13, 2009, by Defendant Henry. Complaint at 6; Defendant's Motion to Dismiss at 6.

3. <u>Plaintiff indicates that she was not meeting her employer's legitimate expectations at the time she was fired.</u>

In her Complaint, Plaintiff lists numerous problems with both her superiors and employees that show she was not meeting Defendant YMCA's legitimate expectations. In establishing that she was meeting her employer's expectations, a plaintiff cannot rely on her own self-evaluation. *King*, 328 F.3d at 149 (4th Cir. 2003). Similarly, the opinions of customers and co-workers are close to irrelevant in determining whether the employer's legitimate expectations were met. *See id*. at 149 (citing *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir.1998)). It is the opinion of management that matters. *Id*. (looking to management performance evaluations and supervisors' concerns to determine that legitimate expectations were not met).

When an employer provides nondiscriminatory motives for the termination, "it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir.1998)). A plaintiff cannot merely disagree with the evaluations given by her supervisor but must show that the reasons given were pretext for racial bias. *Id*. at 280. Allegations amounting to mere

speculation of racial prejudice do not establish that the nondiscriminatory motives were pretextual. *Id*. at 280–281.

Here, there is extensive evidence, provided by Plaintiff, that her employers had problems with her performance. Defendant Henry was not Plaintiff's direct supervisor, but she had the authority to discipline Plaintiff. The two clashed on numerous occasions, and Defendant Henry wrote Plaintiff up for a disciplinary violation for failing to properly manage her employees. Plaintiff's Response at 7. Plaintiff does provide evidence that her work performance in the past was satisfactory, such as winning the R.O.S.E Award for her work as a housekeeper (prior to being promoted to Supervisor). *Id*. at 2. However, Plaintiff's Complaint enumerates disputes between her and two of her employees, her inability to control her housekeeping staff, and the problems Defendant Henry expressed about her managerial abilities. Complaint at 5–6 [D.I. 2]. Though Plaintiff provides evidence that her supervisors found her performance admirable in the past, this does not meet the specific evidence she provides of her recent, unsatisfactory performance.

Plaintiff repeatedly cites the Employment Security Commission of North Carolina's ("ESC") finding that she was not fired for "misconduct or substantial fault connected with the work. *Id.* at 6; Plaintiff's Response at 8 [D.I. 13]. Plaintiff must assume that this means she was meeting her employer's legitimate expectations. However, unemployment agency findings have no preclusive effect over federal claims when there are substantial differences between the statutes involved. *Pettis v. House of Ruth Md., Inc.*, No. 04-2443, 2006 WL 6507699 at *2 (4th Cir. 2006) (per curiam) (citing *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355, 360 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). In

North Carolina, the ESC uses a much different standard from Title VII when weighing misconduct.[1]

Because Defendant Henry was in a position of authority over Plaintiff, it is her opinion that determines whether or not Plaintiff was meeting the Defendants' legitimate expectations. The Complaint describes numerous reasons why, at the time of her termination, Plaintiff was not meeting the Defendants' expectations. Plaintiff does not support her allegations that the termination and animosity was racially based in any of her pleadings.

4. <u>Plaintiff was replaced by a member of her protected group.</u>

After Plaintiff was fired from her position as Housekeeping Supervisor at the Steele Creek YMCA, she was replaced by her former employee, Kervise Walker, a black male, and Plaintiff thus fails the fourth prong of the wrongful termination test. Plaintiff's Response at 8. Plaintiff asserts that the Defendant YMCA hired Kervise to cover up their discriminatory practices, but mere conclusory allegations without factual support are not enough to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. As the court has determined the motions on the above grounds, it was unnecessary to determine whether Defendant Henry was Plaintiff's employer.

**SO ORDERED.**

---

[1] *Compare* N.C.G.S.A. § 96-14(2) (West 2009) (defining misconduct as "such willful or wanton disregard of an employer's interest as is found in deliberate violations"), *with Hawkins* 203 F.3d at 279 (holding that the courts merely ensure that the reason for termination is nondiscriminatory under Title VII and ignoring the fairness and correctness of the firing).

Signed: June 8, 2011

Graham C. Mullen
United States District Judge